# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MOHAMAD SHEBLEY and EAMAN SHEBLEY, | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 17-cv-01906 |
| v. | )<br>) Judge Andrea R. Wood |
| UNITED CONTINENTAL HOLDINGS, INC., et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mohamad and Eaman Shebley ("Shebleys") were passengers on a flight operated by Defendants United Airlines, Inc., United Continental Holdings, Inc., and SkyWest Airlines, Inc.[1] The Shebleys allege that Defendants discriminated against them on the basis of their perceived religion, race, color, and national origin by wrongfully removing them from their flight, in violation of the Airline Deregulation Act ("ADA"), 49 U.S.C. § 40101, *et seq.*, 42 U.S.C. § 1981, and Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.* Before the Court is Defendants' motion to dismiss the Shebleys' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 22.) Also before the Court is Plaintiffs' motion to amend their Complaint, conduct limited fact discovery, and strike portions of Defendants' reply brief. (Dkt. No. 33.) For the reasons explained below, both motions are granted in part and denied in part.

---

[1] For present purposes, United Airlines, Inc. and United Continental Holdings, Inc. are referred to collectively as "United," and together with SkyWest Airlines, Inc., as "Defendants."

# BACKGROUND

For the purposes of Defendants' motion to dismiss, the Court accepts as true the well-pleaded facts in the Complaint and views them in the light most favorable to the Shebleys. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015).

According to the Complaint, on March 20, 2016, the Shebleys and their three children boarded United Airlines Flight 5811 at O'Hare International Airport in Chicago. (Compl. ¶ 7, Dkt. No. 1.) The family planned to vacation in Washington, D.C., for spring break. (*Id.*) The Shebleys' two older children sat together in row 12, and the Shebleys sat with their youngest child in row 16. (*Id.* ¶¶ 9–10.) Eaman placed the youngest child in a "booster" seat atop the airplane seat. (*Id.* ¶ 9.) When flight attendant Eroll Agacaolli walked down the aisle to check that the passengers were secured with seatbelts, Mohamad politely asked for over-the-shoulder straps for the Shebleys' youngest child, as portrayed on the United website. (*Id.* ¶ 12.) Agacaolli replied that the airline did not provide such straps. (*Id.* ¶ 13.) Mohamad offered to show Agacaolli the picture on the United website on his phone. (*Id.* ¶ 14.)

While Agacaolli was looking at Mohamad's phone, another flight attendant, Alicia Heyes, approached Eaman and informed her that her child could not be seated in the booster. (*Id.* ¶ 15.) Eaman replied, "Okay," and asked whether the airline would provide over-the-shoulder straps instead. (*Id.* ¶ 16.) Heyes repeated that the child could not be seated in the booster. (*Id.* ¶ 17.) Eaman said that she was not aware that she could not use the booster, especially because the Shebleys had been permitted to bring the booster on the plane by other United staff members. (*Id.* ¶ 18.) Eaman asked, "is it safer for my daughter to be without a booster?" (*Id.* ¶ 19.) Heyes again did not answer the question, instead repeating a third time that the child could not be seated in the booster. (*Id.* ¶ 19.)

At this point, Agacaolli told the Shebleys to deboard the plane. (*Id.* ¶ 20.) Mohamad asked why, but Agacaolli simply repeated his request that they deboard. (*Id.* ¶¶ 21–22.) Eaman removed the booster from her daughter's seat, but Agacaolli and Heyes did not notice, as they had already started walking away from the Shebleys towards the cockpit. (*Id.* ¶ 23.) Two passengers approached the Shebleys and stated that they had witnessed the Shebleys follow the flight attendants' instructions and sit with fastened seatbelts the entire time. (*Id.* ¶ 25.) The Shebleys' children began to feel anxious and cry. (*Id.* ¶ 26.)

Later, Heyes returned and saw the Shebleys seated with their seat belts fastened and the booster removed. (*Id.* ¶ 27.) Heyes said nothing, then walked back to the cockpit. (*Id.*) Thirty minutes later, flight attendant Jen Moore approached Eaman and asked what was going on. (*Id.* ¶ 28.) Eaman explained that the other flight attendants had left about an hour ago after instructing them to deboard and without answering any of their questions. (*Id.* ¶ 28.) Moore then requested that Eaman deboard the plane. (*Id.* ¶ 29.) Mohamad told Moore that he was Eaman's husband and that he wanted to know why she was being asked to leave. (*Id.* ¶ 30.) Moore replied that a supervisor would speak to them off the plane and again requested that the Shebleys deboard. (*Id.* ¶ 31.) Mohamad again asked why but received no response. (*Id.* ¶ 32.)

A male flight attendant then approached and told the Shebleys to leave the plane. (*Id.* ¶ 33.) Mohamad asked him why, and the male flight attendant answered that the Shebleys had not followed instructions. (*Id.* ¶¶ 34–35.) Another passenger told the male flight attendant that the Shebleys had already removed the booster as requested and that the other flight attendants had left an hour before and not returned since then. (*Id.* ¶ 36.) The male flight attendant again said that the Shebleys had not followed instructions. (*Id.* ¶ 37.) And Eaman and the other passenger again replied that the Shebleys had followed instructions. (*Id.* ¶ 38.) The male flight

attendant said that if the Shebleys left the plane, they could discuss it further. (*Id.* ¶ 39.) He then motioned for Captain Mathew Wagner to approach the Shebleys and speak to them. (*Id.* ¶ 40.)

Captain Wagner informed the Shebleys that he had been given full authority over the safety of the plane and that the flight attendants had notified him that the Shebleys had not followed instructions regarding their child. (*Id.* ¶ 41.) The Shebleys replied that they had followed instructions. (*Id.* ¶ 42.) Another passenger also told Captain Wagner that the Shebleys had followed instructions. (*Id.* ¶ 43.) Mohamad explained that he asked about over-the-shoulder straps for their child, but the flight attendants did not answer him and left. (*Id.* ¶ 44.) Mohamad reiterated that they had followed instructions. (*Id.*) Captain Wagner then told the Shebleys to deboard the plane. (*Id.* ¶ 45.) When Mohamad asked why, Captain Wagner responded that it was his decision and he would give them more details on the jetway. (*Id.* ¶ 47.) Eaman asked whether the decision was based on discrimination. (*Id.* ¶ 48.) Captain Wagner responded that it was a flight safety issue. (*Id.* ¶ 48.)

The Shebleys left the plane. (*Id.* ¶ 51.) On the jetway, Captain Wagner told them that he would have frightened the other passengers if he had given them an explanation on board. (*Id.* ¶ 52.) He then told a story about how a passenger had disobeyed instructions on a U.S. Airways plane that crashed in the Hudson River, before concluding that he needed the Shebleys to follow instructions no matter what. (*Id.* ¶ 52.) Mohamad insisted that they had followed instructions and that Captain Wagner's explanation was irrelevant. (*Id.* ¶ 53.) Captain Wagner apologized for the inconvenience and said nothing further. (*Id.* ¶ 54.) Ultimately, the Shebleys gathered their children and belongings and boarded a different flight to Washington D.C. (*Id.* ¶ 55.)

4

Based on these allegations, the Shebleys assert that Defendants discriminated against them by removing them from their flight. With their present motion, Defendants seek to dismiss the Complaint in its entirety.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### I. Section 40127(a) of the ADA

In Count I of their Complaint, the Shebleys assert a claim under § 40127(a) of the ADA, which prohibits any "air carrier" from "subject[ing] a person in air transportation to discrimination on the basis of race, color, national origin, sex, or ancestry." Defendants argue that this claim should be dismissed because there is no private right of action under § 40127(a).[2]

---

[2] Traditionally, § 40127(a) has been invoked by the United States Department of Transportation ("DOT") in enforcement actions. Congress has given the DOT authority to review discrimination claims against domestic and foreign air carriers and enforce air travelers' rights. *See* 49 U.S.C. § 41310(b); *see also* Romualdo P. Eclavea and Barbara J. Van Arsdale, *Prohibition against discrimination*, 8A Am. Jur. 2d Aviation § 70 (2018). Passengers who believe they have been discriminated against may file a complaint with the DOT's Aviation Consumer Protection Division, and the DOT may then elect to initiate an enforcement action pursuant to § 40127(a) and other federal statutes. *See* Amna Arshad, *Blurred Lines: Security and Civil Rights at 40,000 Feet*, 29 No. 4 Air & Space Lawyers 1, 15 (2017); *see also Processing of Complaints Alleging Discrimination by Airlines Based on Race, Color, National Origin, Sex, Religion or Ancestry*, U.S. Dep't of Transp., https://www.transportation.gov/airconsumer/processing-complaints-alleging-discrimination-airlines-based-race-color.

The Seventh Circuit has not addressed whether § 40127(a) authorizes a private right of action. Based on this Court's review, most federal courts confronted with the issue have concluded that no private right of action exists. *See, e.g.*, *Mali v. British Airways*, No. 17 Civ. 685-KPF, 2018 WL 3329858, at *4 n.4 (S.D.N.Y. July 6, 2018); *James v. Am. Airlines*, 247 F. Supp. 3d 297, 307 (E.D.N.Y. 2017); *Arif Naqvi. v. Turkish Airlines, Inc.*, 80 F. Supp. 3d 234, 239 n.7 (D.D.C. 2015); *Mercer v. Sw. Airlines Co.*, No. 13-cv-05057-MEJ, 2014 WL 4681788, at *6 (N.D. Cal. Sept. 19, 2014); *Al-Watan v. Am. Airlines*, 570 F. Supp. 2d 925, 931 n.5 (E.D. Mich. 2008) (finding no private right of action but also recognizing that the ADA may be a "vehicle for general federal statutes which prohibit discrimination," such as § 1981); *Elnajjar v. Nw. Airlines, Inc.*, No. Civ. A. H-04-680, 2005 WL 1949545, at *6 (S.D. Tex. Aug. 15, 2005).

Nonetheless, some district courts at least have hinted otherwise. For example, in *Qayyum v. U.S. Airways, Inc.*, No. 3:08-0996, 2008 WL 4879401, at *1 n.1 (S.D. W. Va. Nov. 12, 2008), the court declined to dismiss a plaintiff's § 40127(a) claim because the reference to the statutory provision in the preliminary statement of the complaint "was enough to place Defendant on notice of the claims," even though the statutory section was not included in any specific counts. Notably, however, the defendant in *Qayyum* did not explicitly challenge the validity of the § 40127(a) claim in its motion to dismiss. *Id.* Similarly, in *Williams v. Midwest Airlines, Inc.*, 321 F. Supp. 2d 993, 996 (E.D. Wis. 2004), the court suggested in dicta that the plaintiffs' allegations could give rise to several federal claims, including an action under § 40127. But again, the validity of a private right of action under § 40127(a) does not appear to have been directly raised by the parties. *Id.* Finally, in *Alasady v. Northwest Airlines Corp.*, No. Civ. 02-3669(RHK/AJB), 2003 WL 1565944, at *10 n.13 (D. Minn. Mar. 3, 2003), the court observed that that a private right of action ***might*** exist under § 40127(a). The *Alasady* court based this

supposition on the fact that Congress amended § 41705 of the ADA, which prohibits discrimination in air transportation against handicapped individuals, in a way that rendered a private right of action inconsistent with the structure of that provision at the same time that it enacted § 40127(a); yet, Congress did not include the same language negating a private right of action in § 40127(a) as it did with respect to § 41705. *Id.*

In deciding whether § 40127(a) or any other federal statute creates an implied private right of action, the Court's task is to "interpret the statute to determine whether it displays an intent to create both a private right and a private remedy." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 857 (7th Cir. 2017). "Rights-creating language is critical to that analysis." *Id.* The statutory language must "explicitly confer a right directly on a class of persons" that includes the plaintiff. *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690 n.13 (1979). If the statute displays no intent to create a private remedy, "courts may not create one, no matter how desirable that might be as a policy matter." *Sandoval*, 532 U.S. at 286–87.

Applying these principles to § 40127(a), the Court agrees with the majority of federal courts to have considered the issue and finds that the statute does not confer a private right of action. As noted above, § 40127(a) states that "***[a]n air carrier or foreign carrier*** may not subject a person in air transportation to discrimination . . . ." (emphasis added). This language focuses directly on the entity regulated, rather than the individual protected, and thus creates no private right of action. *Chessie*, 867 F.3d at 857 (finding no private cause of action where statute provisions included, "[a] rail carrier must file an application . . ." (emphasis added)). In this way, § 40127(a) stands in sharp contrast to other statutes recognized by the Seventh Circuit as conveying a private right of action, which focus on the individual having the cause of action—

for example, 20 U.S.C. § 1681, "No **person** in the United States shall, on the basis of sex, be subjected to discrimination . . ." and 42 U.S.C. § 10805(a), "*A system* established under section 10803 of this title shall have access to all records . . . ." *Id.* at 857–58 (emphasis added) (quoting *Cannon*, 441 U.S. at 681–82, and *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 375 (7th Cir. 2010) (*en banc*)).

Therefore, because the Court has determined that § 40127(a) does not create a private right of action, Count I of the Complaint is dismissed with prejudice.

**II.        Section 1981**

In Count II, the Shebleys assert a claim pursuant to 42 U.S.C. § 1981, which prohibits racial discrimination in the making and forming of contracts. *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013). To state a claim under § 1981, the Shebleys must allege that (1) they are members of a racial minority, (2) Defendants intended to discriminate against them on the basis of their race,[3] and (3) the alleged discrimination relates to the making and forming of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Here, the Shebleys have satisfied the first and third elements by pleading that they are Lebanese-American[4] and that they contracted with Defendants for five seats on Flight 5811. But Defendants dispute whether the Shebleys have sufficiently alleged intentional racial discrimination, as opposed to what Defendants construe as merely "a customer service dispute" that resulted from the Shebleys'

---

[3] Section 1981 does not protect against discrimination based on ancestry, national origin, or ethnicity. To the extent that Count II is based on such discrimination, it is dismissed. (*See* Compl. ¶ 68A.)

[4] While the Shebleys do not plead that they are members of any specific race, the Court draws a reasonable inference from their self-identification as Lebanese-American that they are (or were perceived to be) Middle Eastern or Arab. The Seventh Circuit has recognized "Arabs" as a protected class under § 1981. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756–57 (7th Cir. 2006) ("Supreme Court and Seventh Circuit precedent dictate that, for the purposes of § 1981, we must view race broadly to encompass those of Iranian ancestry."). Therefore, the Shebleys have adequately pleaded the first element of § 1981.

"repeated failure to follow crewmember instructions." (Mem. In Support of Defs.' Mot. to Dismiss Pls.' Compl. ("Defs.' Mem.") at 6–7, Dkt. No. 23.)

In this case, the Court finds that the Shebleys' allegations give rise to a § 1981 claim. As Defendants recognize, the Shebleys have alleged that their family was "unfairly targeted" due to their race. According to the Shebleys, even though they consistently followed instructions and treated the flight attendants politely, they were asked to leave the plane. Moreover, the Shebleys asked no less than five times why they had to deboard, but the flight attendants repeatedly refused to answer. Later, the Shebleys were given a variety of reasons—their failure to follow instructions, the captain's discretion, and "a flight safety issue." But even after leaving the plane, the Shebleys did not receive a reasonable explanation regarding how they had failed to follow instructions or caused a flight safety issue. The extreme response to the Shebleys' behavior creates a plausible inference that they were subjected to intentional racial discrimination. *See Irving v. Pui Tak Ctr.*, No. 12 CV 8092, 2013 WL 2251757, at *2–3 (N.D. Ill. May 22, 2013) (holding that plaintiff sufficiently pleaded intentional racial discrimination where defendants taped preschooler's hands together despite no indication that he was violent, posed a threat to himself or those around him, or needed to be restrained for any reason).

While the link between their mistreatment and their claim of racial discrimination is somewhat conclusory at this time, the Shebleys have provided sufficient factual information to put Defendants on notice of their claim, which is all they need to do at this point in the litigation. *See, e.g.*, *Lewis v. Schmidt*, No. 10 CV 1819, 2011 WL 43029, at *6 (N.D. Ill. Jan. 4, 2011) (finding second element of § 1981 claim satisfied by allegation that defendants discriminated against plaintiff "solely because of his skin color and to illegally force him to move from the community"). Defendants may be able to obtain summary judgment if the evidence shows that

they removed the Shebleys from their flight for a non-discriminatory reason or if the Shebleys cannot put forward enough evidence to support that the reason was actually based on their race, but the Court will not dismiss Count II on the pleadings. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("Although the defendants ultimately may be able to prove that they would have engaged in the same conduct [absent discriminatory motive] . . . that is a question to be confronted later in the litigation when the plaintiff is put to her proof."). Accordingly, Defendants' motion is denied as to Count II.[5]

### III. Title VI

Finally, in Count III, the Shebleys assert a Title VI discrimination claim. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d.[6] Congress enacted Title VI to "avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).

To plead their claim under Title VI successfully, the Shebleys must plausibly allege that Defendants have received "federal financial assistance" within the meaning of Title VI. The

---

[5] The Shebleys have also asked the Court to strike certain portions of the Defendants' reply in support of their motion to dismiss for improperly asserting facts outside of the Complaint. (Pls.' Mot. to Amend Compl. ¶¶ 11–14, Dkt. No. 33.) Motions to strike are generally disfavored, as they often unnecessarily delay the proceedings. *Divine v. Volunteers of Am. of Ill.*, 319 F. Supp. 3d 994, 999 (N.D. Ill. 2018). The Court is well aware that for the purposes of considering a motion to dismiss, it must accept as true all well-pleaded allegations in a complaint and disregard any statements to the contrary. Thus, the Court declines to strike any portion of the Defendants' reply.

[6] Like § 1981, Title VI does not provide for protection against religious discrimination. Therefore, the Shebleys' claim is dismissed to the extent that it alleges discrimination on the basis of their "actual or perceived religion." (*See* Compl. ¶ 73.)

Shebleys originally argued that Defendants must comply with Title VI because they received federal financial assistance under the Air Transportation Safety and Systems Stabilization Act (the "Act"), P.L. 107-42. (Compl. ¶ 72.) However, as Defendants countered in their motion to dismiss, the Act merely compensated Defendants for losses suffered from the September 11, 2001 terrorist attacks and thus does not constitute federal financial assistance. (Defs.' Mem. at 8–9); *see Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1334 (11th Cir. 2005) (holding that accepting federal compensation for September 11, 2001 terrorist attacks does not qualify as receipt of federal funding); *Bary v. Delta Airlines, Inc.*, No. CV-02-5202(DGT), 2009 WL 3260499, at *6–7 (E.D.N.Y. Oct. 9, 2009) (dismissing plaintiff's Title VI claim where there was "no indication that [defendant] received any federal funding outside of the compensation it received [for the September 11, 2001 terrorist attacks]").

Plaintiffs thus seek to amend their complaint to state that Defendants receive some type of federal funding, even if not through the Act, and to conduct limited fact discovery to substantiate this allegation. (Pls.' Mot. to Amend Compl. ¶¶ 5–10, Dkt. No. 33.) But the receipt of federal funds does not automatically render a defendant liable under Title VI. *See, e.g.*, *James*, 247 F. Supp. 3d at 306 (dismissing Title VI claim where plaintiff failed to identify any program or activity receiving federal financial assistance); *McCrudden v. E-Trade Fin. Corp.*, No. 13-cv-8837, 2014 WL 3952903, at *3 (S.D.N.Y. Aug. 12, 2014) (same); *Teran v. Vill. of Wheeling*, No. 13 C 6509, 2014 WL 293897, at *10 (N.D. Ill. June 30, 2014) (dismissing Title VI claim where plaintiffs "allege only that [Defendant] is a recipient of federal funds"). In defining "program or activity," Congress has clarified that Title VI does not apply to all operations of a private entity if it only receives federal funds for a specific and limited purpose. *See, e.g.*, *Boswell v. SkyWest Airlines, Inc.*, 217 F. Supp. 2d 1212, 1216 (D. Utah 2002) (holding that defendant airline's

11

receipt of federal subsidy for three specific routes did not render it liable under Title VI for all flights and operations). With respect to private entities such as Defendants, Title VI liability does not apply to all their operations and activities unless the federal financial assistance was extended to the corporation as a whole. *See* 29 U.S.C. § 794(b)(3)(A); *Bary*, 2009 WL 3260499, at *7; *Boswell*, 217 F. Supp. 2d at 1216. Here, the Shebleys have not alleged that Defendants received federal funding for the specific flight at issue, nor that Defendants as a whole received federal funding. Consequently, as it stands, the Complaint fails to state a claim against Defendants under Title VI.

Moreover, even if the Shebleys discovered that Defendants receive some federal funding, they would still lack standing under Title VI. To establish standing under Title VI, a plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally-funded program. *See Simpson v. Reynolds Metal Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980)[7]; *Doe v. Woodridge Elementary Sch. Dist. No. 68 Bd. of Educ.*, No. 04 C 8250, 2005 WL 910732, at *2 (N.D. Ill. Apr. 13, 2005) (holding that plaintiff-parent does not have standing under Title VI where her son is the intended beneficiary of defendant's federally-funded program); *Bary*, 2009 WL 3260499, at *7 n.7 ("There is nothing to indicate that plaintiff [airplane passenger] was an intended beneficiary of the money that [defendant airline] received pursuant to the Stabilization Act."). The Shebleys have not pleaded that they are the intended beneficiaries of any federal financial assistance received by Defendants, as required for standing under Title VI.

---

[7] The Shebleys argue that the Seventh Circuit's decision in *Simpson* was overruled by the Supreme Court in *National Credit Union Administration v. First National Bank & Trust Co.*, 522 U.S. 479 (1998). However, the Shebleys misinterpret *National Credit Union*: there, the Court discussed the requirements for establishing prudential standing of an agency decision under the Administrative Procedure Act, not under Title VI or other provisions of the Civil Rights Act of 1964. *Id.* at 488.

Nor have the Shebleys alleged that Defendants operated a program or activity that discriminated against them, as opposed to merely one of Defendants' employees discriminating against them. *Cf. Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1023–24 (7th Cir. 1997) ("Because Title IX only prohibits discrimination by the 'program or activity,' it must be the 'program or activity' and the institution that operates it that discriminate, not merely one of its employees."). The Shebleys contend that their Title VI claim is based on *respondeat superior*. But the Seventh Circuit, in the analogous context of suits under Title IX, has instructed that a defendant "sued in a private suit . . . cannot be held liable on the ground of *respondeat superior* for an employee's violation of the statute." *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012). Instead, to hold a defendant liable, the plaintiff must plead that one of the defendant's officials "who at a minimum has authority to institute corrective measures" had "actual knowledge" of and was "deliberately indifferent to" the discriminatory conduct. *Id.* The Shebleys have offered no reason why the same principle would not apply for their Title VI claim. According to the Shebleys, only Captain Wagner and the flight attendants on board had actual knowledge of the discriminatory conduct, and none of them qualify as officials with authority to institute corrective measures. The only people with actual knowledge of the discriminatory conduct were the perpetrators, which is insufficient to sustain a Title VI claim against Defendants.

Therefore, the Court dismisses Count III. This count is dismissed without prejudice, however, and Plaintiffs will be given an opportunity to amend their Complaint to address the pleading deficiencies.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 22) is granted in part and denied in part. The motion is granted as to Counts I and III—with the former dismissed with prejudice and the latter without prejudice. The motion is denied as to Count II. Plaintiffs' motion to amend their complaint, conduct limited fact discovery, and strike portions of Defendants' reply brief (Dkt. No. 33) is granted in part and denied in part. Plaintiffs are granted leave to amend an amended complaint that remedies the pleading deficiencies with respect to Count III within 28 days. The requests for leave to conduct limited fact discovery and to strike portions of Defendants' reply brief are denied.

ENTERED:

Dated: January 16, 2019

_____
Andrea R. Wood
United States District Judge