**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MOHAMAD SHEBLEY and EAMAN SHEBLEY,** ) ) ) **Plaintiffs,** ) ) vs. ) ) **UNITED CONTINENTAL HOLDINGS, INC., UNITED AIRLINES, INC., and SKYWEST AIRLINES, INC.,** ) ) ) ) **Defendants.** ) | **No. 17 CV 01906** **Judge Andrea R. Wood** |

**FIRST AMENDED COMPLAINT**

NOW COME the Plaintiffs, MOHAMAD SHEBLEY and EAMAN SHEBLEY, by and through their attorneys, Phillip J. Robertson of CAIR-Chicago and Maaria Mozaffar, and for their First Amended Complaint against Defendants UNITED CONTINENTAL HOLDINGS, INC., UNITED AIRLINES, INC., and SKYWEST AIRLINES, INC., state as follows:

**INTRODUCTION**

1. Plaintiffs bring this action pursuant to 49 U.S.C § 40127 (a), 42 U.S.C. § 1981, and 42 U.S.C. § 2000d to remedy acts of discrimination on the basis of their actual and/or perceived religion, race, ancestry, ethnicity, color and/or national origin committed by Defendants when Plaintiffs were wrongfully removed from United Airlines Flight 5811 on March 20, 2016, at Chicago's O'Hare International Airport.

1

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over the subject-matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3.  Venue is proper in this judicial District pursuant to 28 U.S.C. § 1319(b) because Defendants regularly operate their airline services in, and have a continuous presence in, the State of Illinois (specifically, regular operations at O'Hare International Airport in Chicago, Illinois). United is also headquartered in Chicago, Illinois.

## PARTIES

4.  Mohamad Shebley and Eaman Shebley ("Plaintiffs") are United States citizens and residents of the State of Illinois. Plaintiffs are Lebanese-Americans and Muslims. Plaintiff Eaman Shebley is an accountant and the mother of three children. She wears a traditional head covering required by her Islamic faith -- the hijab. Her husband, Plaintiff Mohamad Shebley, is a Director of Clinical Pharmacology with a Ph.D in Pharmacology.

5.  United Continental Holdings, Inc., is the parent company of its subsidiary, United Airlines, Inc. (collectively "United"). United is a commercial air carrier engaged in domestic, intrastate, interstate, and foreign air transportation, and is headquartered in Chicago, Illinois. United hires pilots, flight attendants, and service crew to carry out its flights, and it contracts with other air carriers for certain routes.

6.  SkyWest Airlines, Inc., is the parent company of its subsidiary, SkyWest Airlines (collectively "SkyWest"). SkyWest is a commercial air carrier engaged in domestic, intrastate, interstate, and foreign air transportation, and is headquartered in St. George,

Utah. SkyWest hires pilots, flight attendants, and service crew to carry out its flights, and it is contracted by other air carriers to fly certain routes for them.

## FACTUAL ALLEGATIONS

7. On March 20, 2016, Plaintiffs boarded United Flight 5811 along with their three young children at O'Hare International Airport in Chicago, Illinois, departing to Washington D.C. for a family vacation for Spring Break.

8. All five passengers passed through security with ease and on time.

9. Eaman Shebley was seated with her young daughter (who was in a booster) in seats 16c and 16d.

10. Mohamad Shebley was seated in seat 16b, and the two other children were seated in seats 12c and 12d.

11. Flight Attendant Eroll Agacaolli, an employee of Defendant SkyWest, walked down the aisle checking the seatbelts of all the passengers. Plaintiffs and all three children were secured with seatbelts.

12. Mohamad Shebley politely asked Agacaolli for over-the-shoulder straps for their youngest child who was sitting in the booster seat next to Eaman as indicated by United's website (United.com).

13. Agacaolli responded by saying that the airline did not supply over-the-shoulder straps for its passengers.

14. Mohamad offered to show Flight Attendant Agacaolli the straps indicated on the United website. Agacaolli took Mohamad's phone to look at the website.

15. While Agacaolli was reading the website on the phone, another Flight Attendant, Alicia Heyes, approached Eaman and informed her that her daughter could not be seated in a booster seat.

16. Eaman said, "Okay," and asked if the airline would be providing over-the-shoulder straps for her daughter instead.

17. Alicia Heyes did not answer Eaman's question, but instead simply repeated her directive that her daughter could not be seated in a booster seat.

18. Eaman, now a little confused, stated that she was not aware that she could not use the car seat booster, especially since Plaintiffs were allowed to bring it on to the plane with them after being checked-in at the gate by Defendants' own staff. She asked, "Is it safer for my daughter to be without a booster?"

19. Heyes did not answer the question, but simply responded again that her daughter could not be in a booster.

20. At this point, Agacaolli informed the Shebleys that they all needed to step off the plane.

21. Mohamad asked why they were being asked to leave.

22. Neither Agacaolli nor Heyes gave Plaintiffs an answer. Instead, Agacaolli repeated his request by telling them that they all needed to step off the plane.

23. Eaman removed the booster seat from under her daughter, but by this point the flight attendants were no longer looking at Plaintiffs. Both Agacaolli and Heyes had already turned away from Plaintiffs and were walking toward the cockpit without answering any questions or providing an explanation.

24. Plaintiffs did not understand why they were being asked to get off the plane.

25. Two passengers then approached Plaintiffs stating that they witnessed them follow all the instructions of the flight attendants, and that Plaintiffs were seated with fastened seatbelts the entire time.

26. Plaintiffs' children started to feel anxious to the point of tears, especially after another passenger said they were all going to spend the night in jail.

27. After a long delay, Alicia Heyes eventually returned, viewed both Plaintiffs with seat belts, all three children with seatbelts, and the booster seat removed. Heyes said nothing and walked back to the cockpit.

28. Half an hour later, Flight Attendant Jen Moore approached Eaman and asked what was going on. Eaman answered by stating that the other attendants had left them about an hour ago after asking them to de-board, and were not answering any questions. She told Moore that the other attendants told them nothing and offered them no explanation as to why they had to leave the plane.

29. Moore then told Eaman that she needed to take her belongings and step off the plane.

30. Mohamad informed Moore that he was her husband, and he wanted to know why she was being asked to leave the flight.

31. Moore responded that a supervisor would speak to them about this off the plane. Moore said they were being requested to leave the plane.

32. Mohamad then asked why they were being asked to leave the plane.

33. At this point a male flight attendant approached Eaman and again told her that they needed to leave the plane.

34. Mohamad again asked why they needed to leave the plane.

35. The male flight attendant responded that they were allegedly not following instructions.

36. A fellow passenger responded to the attendant by telling him that Plaintiffs had already removed the booster seat per the request, and that the other flight attendants disappeared an hour ago and had not returned since then.

37. The male flight attendant again told Mohamad that they were not following directions.

38. In response, both Eaman and the other passenger told him that the instructions of the other flight attendants were followed.

39. At that point, the male flight attendant said that if the Plaintiffs de-boarded they could discuss it.

40. The attendant then motioned to the Captain to approach Plaintiffs to speak with them.

41. Captain Mathew Wagner stated that he was given full authority for the safety of the plane, and that the flight attendants had notified him that the Shebleys were not following instructions regarding their child.

42. Plaintiffs replied that they did follow the instructions.

43. One of the passengers who had witnessed the whole ordeal responded to the Captain by stating that all the instructions were followed.

44. Mohamad responded by saying that all he did was ask about over-the-shoulder straps for his children, and that the other flight attendants did not answer him but instead just left and had not returned. He said that they followed all the instructions, but now they were being asked to leave.

45. The Captain answered in the affirmative, and Mohamad again asked him why.

46. Plaintiffs felt that their family was being unfairly targeted, given that they had followed all the instructions, removed the booster seat, and were not being provided an explanation as to why they now had to leave the plane.

47. The Captain replied that it was his decision, and that he would talk to them on the jetway and give them more details.

48. Eaman asked if the decision was based on bias/discrimination. The Captain responded that it was a flight safety issue.

49. Eaman then asked the Captain if he saw the booster seat now.

50. Mohamad again asked why his family was being singled out, but once again he was not provided any explanation.

51. Frustrated and sensing the futility of their efforts to obtain an answer from the flight crew or Captain, and not wanting to cause any further emotional or psychological damage to their three young children, the family left the plane.

52. On the jetway, Captain Wagner told Plaintiffs that he would have frightened the other passengers if he had explained this on board. He told them that after the U.S. Airway plane landed on the Hudson River, a passenger tried to open the plane's emergency exit

7

door even though a crew member told him that they were under water. He said that he needed Plaintiffs to follow instructions no matter what they are.

53. Mohamad responded that they did follow all the instructions, and that the explanation given by the Captain was irrelevant.

54. Captain Wagner did not comment on the fact that all the instructions were indeed followed by Plaintiffs, and simply apologized for the inconvenience.

55. Plaintiffs then gathered their belongings, their tired and worried children, and walked to their next flight on the other side of the airport. Defendants had placed them on another United flight to Washington D.C.

56. None of the flight crew (including the Captain) were identifiably Middle-Eastern or Muslim. Videos of the interactions between Plaintiffs and the flight crew show Plaintiffs continuously asking for a reason for their removal, with no one providing an answer.

## COUNT I
### 42 U.S.C. § 1981: DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS

57. Plaintiffs hereby repeat and re-allege the allegations contained in Paragraphs 1 through 56 above as though fully set forth verbatim herein.

58. At all relevant times, the pilot, flight crew, gate agents and other personnel for United Airlines Flight 5811 were agents and/or employees of Defendants (either United or SkyWest).

59. Defendants are liable for the unlawful acts of their agents and employees directly, and/or under the doctrine of respondeat superior.

60. Plaintiffs did not violate any of Defendants' rules, regulations or guidelines, nor did they present any safety or security risk. Therefore, they were entitled to transport on the flight, and such constituted a contract with Defendants for air travel from Chicago, Illinois, to Washington, D.C., on Defendants' aircraft.

61. Defendants engaged in intentional discrimination on the basis of Plaintiffs' actual or perceived race, color, ancestry, national origin, or ethnicity in arbitrarily singling them out and removing them from Flight 5811. Consequently, Defendants discriminated against Plaintiffs in the making and enforcement of their contract to fly on United Airlines Flight 5811 on March 20, 2016.

62. Defendants' conduct against Plaintiffs has therefore deprived Plaintiffs of their right to make and enforce contracts regardless of race, color, ancestry, national origin, or ethnicity, in violation of 42 U.S.C. § 1981.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant them the following relief:

A. Declare that Defendants' conduct constitutes discrimination on the basis of race, color, ancestry, national origin, or ethnicity in violation of 42 U.S.C. § 1981;

B. Permanently enjoin Defendants and their directors, officers, agents, and employees from engaging in future unlawful, discriminatory conduct as described above, including revising the policy and/or practice that grants unfettered discretion to airline employees in

deciding when to remove passengers from flights based on their membership in a protected class;

C. Award Plaintiffs compensatory damages in an amount to be determined at trial for their loss and injury, including, but not limited to, emotional distress, humiliation, deprivation of their right to be free from discrimination by air carriers, and deprivation of their right to be free from discrimination in any program or activity receiving federal financial assistance;

D. Award Plaintiffs punitive damages in an amount to be determined at trial that would punish Defendants for their wilful, wanton, and reckless conduct, and that would further deter them from engaging in similar conduct in the future;

E. Award Plaintiffs the costs, expenses, and fees expended herein, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

F. Award Plaintiffs pre-judgment and post-judgment interest;

G. Award Plaintiffs any and all other equitable and further relief to which Plaintiffs may be entitled.

## COUNT II
### 42 U.S.C. § 2000d (Title VI of the Civil Rights Act of 1964): DISCRIMINATION IN FEDERALLY FUNDED ACTIVITIES

63. Plaintiffs hereby repeat and re-allege the allegations contained in Paragraphs 1 through 56 above as though fully set forth verbatim herein.

64. At all relevant times, the pilot, flight crew, gate agents and other personnel for United Airlines Flight 5811 were agents and/or employees of Defendants (either United or SkyWest).

65. Defendants are liable for the unlawful acts of their agents and employees directly, and/or under the doctrine of respondeat superior.

66. Upon information and belief, Defendants received Federal financial assistance to support their domestic air carrier operations as a whole, and/or received Federal funding for the flight or route travelled by Plaintiffs.

67. Despite having opportunities during the course of this litigation to do so, Defendants have never expressly denied receiving Federal financial assistance for their companies as a whole, and have never expressly denied receiving Federal funding for the flight or route travelled by Plaintiffs.

68. Defendants engaged in intentional discrimination on the basis of Plaintiffs' actual or perceived religion, race, color, national origin, or ethnicity in arbitrarily singling them out and removing them from Flight 5811.

69. Defendants' misconduct against Plaintiffs has therefore deprived Plaintiffs of their right to be free from discrimination in any program or activity receiving federal financial assistance in violation of 42 U.S.C. § 2000d.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant them the following relief:

A. Declare that Defendants' conduct constitutes discrimination on the basis of religion, race, color, ancestry, national origin, or ethnicity in violation of 42 U.S.C. § 2000d;

B. Permanently enjoin Defendants and their directors, officers, agents, and employees from engaging in future unlawful, discriminatory conduct as described above, including revising the policy and/or practice that grants unfettered discretion to airline employees in deciding when to remove passengers from flights based on their membership in a protected class;

C. Award Plaintiffs compensatory damages in an amount to be determined at trial for their loss and injury, including, but not limited to, emotional distress, humiliation, deprivation of their right to be free from discrimination by air carriers, and deprivation of their right to be free from discrimination in any program or activity receiving federal financial assistance;

D. Award Plaintiffs punitive damages in an amount to be determined at trial that would punish Defendants for their wilful, wanton, and reckless conduct, and that would further deter them from engaging in similar conduct in the future;

E. Award Plaintiffs the costs, expenses, and fees expended herein, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

F. Award Plaintiffs pre-judgment and post-judgment interest;

G. Award Plaintiffs any and all other equitable and further relief to which Plaintiffs may be entitled.

## **JURY DEMAND**

70. Plaintiffs hereby request a trial by jury.

Date: March 15, 2019.

                                                        Respectfully Submitted,

                                                        MOHAMAD SHEBLEY
                                                        EAMAN SHEBLEY

                                        BY:    /s/ Phillip J. Robertson_____
                                                     One of their Attorneys

Attorneys for Plaintiffs:

Phillip J. Robertson
CAIR-Chicago
17 N. State St., Ste. 1500
Chicago, IL  60602
PH:    (312) 212-1520
FAX:   (312) 212-1530
probertson@cair.com
Atty. No. 6209869


Maaria Mozaffar
The Law Office of Maaria Mozaffar, P.C.
25901 West Kelly Court Plainfield
Naperville, IL 60563
PH:    (331) 643-3107
maariamozaffar@sbcglobal.net
Atty. No. 6295280