**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MOHAMAD SHEBLEY et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 17-cv-01906 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| UNITED CONTINENTAL HOLDINGS, ) | |
| INC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Mohamad and Eaman Shebley ("Shebleys") were passengers on a United Airlines flight operated by SkyWest Airlines, Inc. ("SkyWest"). They were removed from the flight and later sued SkyWest, as well as United Continental Holdings, Inc. and United Airlines, Inc. (collectively, "United" or "United Defendants") for discrimination. The Shebleys' original complaint contained three claims: the first based upon the Airline Deregulation Act ("ADA"), 49 U.S.C. § 40101, *et seq.*, the second arising under 42 U.S.C. § 1981, and the third brought under Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.* After Defendants filed a motion to dismiss the original complaint, the Court dismissed the ADA claim with prejudice, dismissed the Title VI claim without prejudice, and denied Defendants' motion to dismiss the § 1981 claim. The Shebleys then filed a First Amended Complaint ("FAC"). Defendants' motion to dismiss the FAC is now before the Court. (Dkt. No. 90.) For the reasons stated below, the Court grants Defendants' motion in part and denies it in part.

**BACKGROUND**

For the purposes of Defendants' motion to dismiss, the Court accepts as true the well-pleaded facts in the FAC and views them in the light most favorable to the Shebleys. *See*

*Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015).

The Shebleys are Lebanese-American and Muslim. (FAC ¶ 4, Dkt. No. 86.) On March 20, 2016, the Shebleys and their three children boarded a United Airlines flight at O'Hare International Airport bound for Dulles International Airport. (*Id.* ¶ 7.) The Shebleys were seated in Row 16 with their young daughter, who sat in a booster seat. (*Id.* ¶ 10.) Their other two children were seated in Row 12. (*Id.* ¶ 10.)

SkyWest was operating the flight under a contract with United. (*Id.* ¶¶ 5–6.) Prior to takeoff, a SkyWest flight attendant named Eroll Agcaoili[1] walked down the aisle, checking seatbelts. (*Id.* ¶ 11.) Mohamad asked Agcaoili for an over-the-shoulder strap for the Shebleys' youngest child, who was sitting in a booster seat. (*Id.* ¶ 12.) Agcaoili responded that the airline did not supply over-the-shoulder straps. (*Id.* ¶ 13.) Mohamad then showed Agcaoili a United website indicating that the airline did, in fact, provide over-the-shoulder straps. (*Id.* ¶ 14.)

Meanwhile, Alicia Hayes,[2] another flight attendant, approached Eaman to tell her that her daughter could not be seated in a booster seat. (*Id.* ¶ 15.) Eaman asked if the airline would provide an over-the-shoulder strap for her daughter in place of the booster seat. (*Id.* ¶ 16.) Hayes did not answer the question and instead repeated her directive that the child could not be in a booster seat. (*Id.* ¶ 17.) Eaman indicated confusion and asked if the child would be safer without a booster seat. (*Id.* ¶ 18.) Hayes did not answer and again repeated that the child could not sit in a booster seat. (*Id.* ¶ 19.)

---

[1] In the FAC, the Shebleys identify this flight attendant as "Eroll Agcaolli." (FAC ¶ 11.) SkyWest corrects the spelling of its flight attendant's last name in its answer. (SkyWest Answer to FAC ¶ 14, Dkt. No. 89.)

[2] In the FAC, the Shebleys identify this flight attendant as "Alicia Heyes." (FAC ¶ 15.) SkyWest corrects the spelling of its flight attendant's last name in its answer. (SkyWest Answer to FAC ¶ 15.)

Agcaoili then informed the Shebleys that they would need to step off the plane. (*Id.* ¶ 20.) When Mohamad asked why, neither flight attendant provided an answer; Agcaoili just repeated his request that they step off the plane. (*Id.* ¶¶ 21–22.) The two flight attendants then turned away from the Shebleys and walked toward the cockpit. (*Id.* ¶ 23.) Eaman removed the booster seat, but the Shebleys did not exit the plane. (*Id.*) The Shebleys did not understand why they were being asked to do so. (*Id.* ¶ 24.)

After a long delay, Hayes returned and saw the Shebleys. (*Id.* ¶ 27.) She said nothing and returned to the cockpit. (*Id.*) About 30 minutes later, another flight attendant named Jen Moore approached Eaman and asked her what was going on. (*Id.* ¶ 28.) Eaman explained the situation to Moore, who then told her that she needed to take her belongings and exit the plane. (*Id.* ¶¶ 28–29.) Mohamad asked Moore why his family was being asked to leave the flight. (*Id.* ¶ 30.) Moore told him that a supervisor would speak to them once they were off the plane. (*Id.* ¶ 31.) Mohamad again asked why they were being asked to leave. (*Id.* ¶ 32.) A male flight attendant then approached Eaman and told her that she needed to leave the plane. (*Id.* ¶ 33.) Mohamad again asked why, and the flight attendant said that the Shebleys were not following instructions. (*Id.* ¶¶ 34–35, 37.) The flight attendant said the Shebleys could discuss the issue with someone if they exited the plane. (*Id.* ¶ 39.)

Captain Mathew Wagener[3] eventually approached and stated that the flight attendants had told him that the Shebleys were not following instructions. (*Id.* ¶ 41.) Mohamad disagreed, stating that they had followed instructions and asking again why they were being asked to exit the plane. (*Id.* ¶¶ 42, 44–45.) The Shebleys felt like their family was being unfairly targeted. (*Id.* ¶ 46.) Wagener said that it was his decision and that he would like to talk to them on the jetway. (*Id.*

---

[3] In the FAC, the Shebleys identify the captain as "Mathew Wagner." (FAC ¶ 41.) SkyWest corrects the spelling of its captain's last name in its answer. (SkyWest Answer to FAC ¶ 41.)

3

¶ 47.) Eaman asked if they were being discriminated against. (*Id.* ¶ 48.) Wagener said they were being removed from the plane for a flight-safety issue. (*Id.* ¶ 48.) Mohamad asked why his family was being singled out, but he did not receive an answer. (*Id.* ¶ 50.)

The Shebleys then exited the plane with their children. (*Id.* ¶ 51.) On the jetway, Wagener told the Shebleys about the importance of following instructions, telling a story about a U.S. Airways plane that landed in the Hudson River. (*Id.* ¶ 52.) Mohamad repeated that they had followed instructions. (*Id.* ¶ 53.) Wagener did not respond to that statement and instead just apologized for the inconvenience. (*Id.* ¶ 54.) The Shebleys and their children then walked to another gate and boarded a different United flight to Dulles. (*Id.* ¶ 55.) As far as they could tell, no member of the flight crew with whom they interacted was Muslim or of Middle Eastern origin. (*Id.* ¶ 56.)

The Shebleys have now sued the United Defendants and SkyWest. Their original complaint included claims under the ADA, § 1981, and Title VI. Defendants moved to dismiss that complaint, and the Court granted their motion in part and denied it in part. Specifically, the Court dismissed the ADA claim with prejudice, dismissed the Title VI claim without prejudice, and denied Defendants' motion to dismiss the § 1981 race discrimination claim. In dismissing the Title VI claim, the Court concluded that the original complaint failed to allege adequately that the Shebleys were discriminated against in a federally-funded activity or program, that they were the intended beneficiaries of such an activity or program, and that they were discriminated against by such a program or activity (and not merely by Defendants' employees).

The Shebleys filed their FAC in an attempt to address those pleading deficiencies. The FAC asserts only two claims: Count I asserts a claim for discrimination based on race under 42

4

U.S.C. § 1981,[4] and Count II asserts a claim for discrimination based on race, color, national origin or ethnicity under Title VI.[5] Defendants now seek to dismiss the § 1981 claim with respect to the United Defendants and the Title VI claim with respect to all three Defendants. They do not seek dismissal of the § 1981 claim against SkyWest.

## DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### I.     Count I—Section 1981

To state a claim under § 1981, plaintiffs must plead that "(1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, the making and enforcing of a contract)." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413–14 (7th Cir. 1996); *see also Quinn v. Nat'l R.R. Passenger Corp.*, No. 97 C 3529, 1997 WL 790738, at *3–4 (N.D. Ill.

---

[4] The FAC states that the § 1981 claim is for discrimination based on "race, color, national origin, or ethnicity." (FAC ¶ 61.) But the Court has already dismissed the § 1981 claim to the extent it purports to allege discrimination based on national origin or ethnicity. (Mem. Op. & Order at 8 n.3, Dkt. No. 76.)

[5] The FAC states that the Shebleys also seek relief for religious discrimination under Title VI. (FAC ¶ 68.) But the Court has already dismissed the Title VI claim to the extent that it purports to allege discrimination based on national original or ethnicity. (Mem. Op. & Order at 10 n.6.)

5

Dec. 18, 1997). When a plaintiff sues a private entity under § 1981, that entity may be liable under a theory of *respondeat superior* or agency, subject to some limitations. *See North v. Madison Area Ass'n for Retarded Citizens-Dev. Ctrs. Corp.*, 844 F.2d 401, 407 (7th Cir. 1988); *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir. 1977).

In their motion to dismiss the original complaint, Defendants argued that the Shebleys had failed to allege facts from which the Court could infer that Defendants acted with the intent required for § 1981 claims. (Mem. in Supp. of First Mot. to Dismiss at 5–7, Dkt. No. 23.) The Court disagreed, finding that the Shebleys had plausibly alleged that Defendants discriminated against them because of their race. (Mem. Op. at 9–10, Dkt. No. 76.) In their motion to dismiss the FAC, Defendants do not ask the Court to dismiss the § 1981 claim against SkyWest. Instead, they only ask the Court to dismiss the § 1981 claim against United—this time on the basis that the Shebleys have failed to plead that United owned, operated, controlled, or staffed the plane from which the Shebleys were removed. (Mem. in Supp. of Second Mot. to Dismiss at 9–11, Dkt. No. 92.)

The FAC's allegations regarding the § 1981 claim are not materially different from those in the original complaint. This is not surprising given that the § 1981 claim survived Defendants' first motion to dismiss. But now, in response to the FAC, Defendants have raised a new argument—one they failed to raise in their motion to dismiss the original complaint even though it was equally available to them. Federal Rule of Civil Procedure 12(g)(2) forbids a party who has filed a Rule 12 motion from "mak[ing] another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." On its face, this Rule would seem to preclude Defendants from raising their new argument in their present motion to dismiss.

6

But Rule 12(g)(2) has an exception for defenses that can be presented at other times under Rule 12(h). And Rule 12(h)(2) allows a party to present an argument that a claim fails to state a claim in any pleading allowed under Rule 7, in a motion under 12(c), and at trial. The Seventh Circuit has read Rules 12(g) and 12(h) to allow a defendant who moved to dismiss a complaint for failure to state a claim to make a new argument in a motion to dismiss an amended complaint for failure to state a claim, even if that new argument was available when the defendant filed its previous motion to dismiss. *See Ennerga v. Sterns*, 677 F.3d 766, 772–73 (7th Cir. 2012). Other courts of appeals have disagreed with the Seventh Circuit's approach. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017); *Layse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 F.3d 316, 321 (3d Cir. 2015). But this Court is not aware of any authority suggesting that *Ennerga* is no longer good law in this Circuit. *See About U.S. Real Estate, Inc. v. Burnley*, No. 14 C 04471, 2015 WL 3397025, at *6 (N.D. Ill. May 26, 2015) (applying *Ennerga* to hold that a defendant could make new argument in a second motion to dismiss that was available for its first motion to dismiss). *Ennergra* may be distinguishable from the present case, however, in that the defendant there actually prevailed on its first motion to dismiss. *Ennergra,* 677 F.3d at 771; *see also Kramer v. Am. Bank & Tr. Co., N.A.*, 11 C 8758, 2014 WL 3638852, at *3 (N.D. Ill. July 23, 2014) (discussing this aspect of *Ennergra* in finding that the case did not allow a defendant to raise a new argument in a second motion to dismiss where the defendant had failed in its first motion to dismiss). In the end, it does not matter because the Shebleys have not raised any objection under Rule 12(g) (perhaps in consideration of *Ennergra*) and, in any case, the new argument for dismissal of the § 1981 claims fails as well.

The Shebleys have adequately alleged that United was responsible for those staff members who allegedly acted with an intent to discriminate against them. The Shebleys allege that they

7

were removed from a United Airlines flight. (Am. Compl. ¶¶ 1, 7.) They further allege that "the pilot, flight crew, gate agents and other personnel of United Airlines flight 5811 were agents and/or employees of Defendants (either United or SkyWest)" (*id.* ¶ 58), and that after they were removed from one United Airlines flight, they were placed on another United Airlines flight. (*Id.* ¶ 55.) Under the circumstances, the allegations support a plausible inference that United was responsible for the allegedly discriminatory acts. Although the allegations do not contain a great amount detail about who employed or directed which employees, they suffice to state a § 1981 claim against United.

Indeed, Defendants do not truly argue otherwise. In their motion to dismiss the FAC, Defendants instead focus on showing why the Shebleys will not be able to prove their case by relying on various affidavits attached to Defendants' supporting memorandum. But it would be inappropriate for the Court to consider those affidavits in connection with a motion to dismiss without converting that motion to one for summary judgment. *See Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002); *Slamecka v. Empire Kosher Poultry, Inc.*, 290 F. Supp. 2d 934, 937 (N.D. Ill. 2003). Defendants have not asked to convert the motion, and the Court declines to do so *sua sponte*. Defendants may be able to argue at the summary judgment stage that United did not employ or control any of the staff members who interacted with the Shebleys. But the facts underlying that argument are not apparent on the face of the FAC and the Shebleys were not required to plead around it. The Court therefore denies Defendants' motion to dismiss the § 1981 claim against the United Defendants.

## II. Count II—Title VI

In its previous Memorandum Opinion and Order, this Court identified three fatal problems with the Shebleys' pleadings on the Title VI claim. (Mem. Op. & Order at 10–13.) In their FAC, the Shebleys have failed to correct any of those defects. As discussed below, each constitutes a sufficient ground for this Court to dismiss the Title VI claim.

### A. Federally-Funded Activity

Title VI provides that no person shall "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d. As an element of a Title VI claim, the Shebleys must therefore plausibly allege that Defendants received federal financial assistance for a program or activity. The term federal financial assistance encompasses grants or loans of federal funds, grants or donations of federal property, and several other categories of assistance. 28 C.F.R. § 42.102(c). In its previous Memorandum Opinion and Order, the Court rejected the Shebleys' argument that federal money Defendants received as compensation for the September 11, 2001 terrorist attacks constituted federal financial assistance for purposes of Title VI. (Mem. Op. & Order at 11.) In response, the Shebleys have amended their complaint to allege that "[u]pon information and belief, Defendants received Federal financial assistance to support their domestic air carrier operations as a whole, and/or received Federal funding for the flight or route travelled by Plaintiffs." (FAC ¶ 66.) The FAC also adds that Defendants have never expressly denied receiving federal financial assistance in general or for the flight or route for which the Shebleys had tickets. (*Id.* ¶ 67.)

The new allegations in the FAC, however, do not sufficiently plead that Defendants received federal financial assistance. Conclusory allegations of such assistance are not enough to

9

state a claim. *See, e.g.*, *McCrudden v. E-Trade Fin. Corp.*, No. 13-cv-8837, 2014 WL 3952903, at *3–4 (S.D.N.Y. Aug. 12, 2014). Instead, the plaintiff "must identify the specific program or activity that receives federal funds." *Teran v. Village of Wheeling*, No. 13 C 6509, 2014 WL 2938397, at *10 (N.D. Ill. June 30, 2014); *see also James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 306 (E.D.N.Y. 2017). The Shebleys' conclusory statements about federal financial assistance fail to identify which program or activity associated with Defendants received such assistance or what that assistance was. And even if it is true that Defendants have never denied receiving such assistance, that allegation is irrelevant because the Shebleys, as the plaintiffs, have the burden of plausibly alleging each element of their claim. Without identifying a nexus between federal financial assistance and a program or activity conducted by Defendants, the Shebleys cannot state a claim under Title VI.[6]

### B. Intended Beneficiary

Under the well-established law of this Circuit, the Shebleys lack standing to sue under Title VI unless they are intended beneficiaries of federal financial assistance provided to a program or activity. *See Doe ex rel. Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 419–20 (7th Cir. 1986), *overruled on other grounds by Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996); *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980). The Shebleys cite several out-of-circuit cases holding that plaintiffs do not need to be intended

---

[6] In addition to arguing that the Shebleys' pleadings do not suffice to establish this element, Defendants also proffer affidavits from officers at United and SkyWest stating that those airlines only receive federal assistance for the Essential Air Service program, which did not apply to the flight for which the Shebleys had tickets. (Dkt. Nos. 92-1, 92-2.) The Court cannot consider those documents on a motion to dismiss without converting it into a motion for summary judgment. *See Thompson*, 300 F.3d at 753; *Slamecka*, 290 F. Supp. 2d at 937. In any case, the Court concludes that the FAC fails to state a claim without relying on the affidavits.

beneficiaries to sue under Title VI.[7] But it is the Seventh Circuit's precedents that are binding on this Court, not decisions from district courts or other courts of appeals.

      The Shebleys contend that this Court should not follow the Seventh Circuit's precedents on this point because they have been overruled by the Supreme Court in *National Credit Union Administration v. First National Bank & Trust Co.*, 522 U.S. 479 (1998) ("*NCUA*"). But this Court has already addressed that argument in its previous Memorandum Opinion and Order and concluded that the Supreme Court's holding in *NCUA*—which concerned prudential standing to challenge an agency action under the Administrative Procedure Act—did not change the standing analysis for Title VI claims. (Mem. Op. & Order at 12 n.7.) The Shebleys have presented no reason to revisit that conclusion. Moreover, district courts in this Circuit have consistently applied *Doe* and *Simpson*, even after the Supreme Court decided *NCUA*.[8]

      In short, the Shebleys have failed to allege that they are the intended beneficiaries of any federal financial assistance to Defendants; they have not identified any particular federal financial assistance or any program or activity receiving that assistance; and they have not identified any way in which Congress or an executive agency intended to benefit people in their position. Therefore, the Shebleys have failed to state a claim under Title VI.

---

[7] *See Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001) (en banc); *Alasady v. Nw. Airlines Corp.*, No. Civ.02-3669(RHK/AJB), 2003 WL 1565944, at *13 (D. Minn. Mar. 3, 2003); *Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 95 F. Supp. 2d 723, 742 (N.D. Ohio 2000).

[8] *See, e.g.*, *Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1068 (N.D. Ill. 2018); *Sifuna v. Accreditation Council of Pharmacy Educ.*, No. 17 CV 0028, 2017 WL 5891224, at *7 (N.D. Ill. Nov. 28, 2017); *Wilkins v. Powers*, No. 07-599-GPM, 2009 WL 511932, at *3 (S.D. Ill. Feb. 27, 2009); *Blazquez v. Bd. of Educ. of Chicago*, No. 05-CV-4389, 2007 WL 2410369, at *10 (N.D. Ill. Aug. 20, 2007); *Doe v. Woodridge Elementary Sch. Dist. No. 68 Bd. of Educ.*, No. 04 C 8250, 2005 WL 910732, at *2 (N.D. Ill. Apr. 13, 2005); *Hudson v. Kenosha County*, 29 F. Supp. 2d 513, 516 (E.D. Wis. 1998).

### C. Discrimination by Program or Activity

The Shebleys can state a claim under Title VI only by alleging that a federally-funded program or activity operated by Defendants discriminated against them. In the analogous context of Title IX claims, the Seventh Circuit has established that discrimination by Defendants' employees is not enough. *See Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1023–24 (7th Cir. 1997); *see also Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007) (applying that standard to a Title VI claim); *Lanier v. Fresno Unified Sch. Dist.*, No. 09-1779 AWI SKO, 2011 WL 4084091, at *5 (E.D. Cal. Sept. 13, 2011) (same). Therefore, the Shebleys cannot base their claim on the doctrine of *respondeat superior*. *See Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012). Instead, the Shebleys must allege that one of Defendants' officials "who at a minimum has authority to institute corrective measures" had "actual knowledge" of and was "deliberately indifferent to" the discriminatory conduct of Defendants' employees. *Id.*

The Shebleys' argument that *respondeat superior* liability is available for Title VI claims has been rejected in the case law, and none of the cases they cite concern Title VI or analogous statutes. The Shebleys present no argument for why Defendants are liable under the framework of *Smith* and *Doe*. They only allege that a few flight attendants and the captain of the airplane had actual knowledge of the discriminatory conduct. The FAC, however, presents no basis from which to infer that any of those employees had the authority to institute corrective measures at the level of a program or activity. Because the only people aware of the discrimination were the employees committing the discrimination, the Shebleys have failed to state a claim under Title VI.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint (Dkt. No. 90) is granted in part and denied in part. The Court dismisses Count II prejudice. But the Court denies Defendants' motion to dismiss Count I against the United Defendants.

Dated: May 31, 2020

ENTERED:

_____
Andrea R. Wood
United States District Judge

13